346 So.2d 356 (1977)
Ms. Caroline S. BLUM and Ms. Nancy P. Steinhardt
v.
Louis H. MARRERO, and Seale Pest Control Corporation.
No. 7770.
Court of Appeal of Louisiana, Fourth Circuit.
May 19, 1977.
Rehearing Denied June 7, 1977.
*357 Philip Montelepre, New Orleans, for Caroline S. Blum and Nancy P. Steinhardt.
Stanley E. Loeb, Loeb & Livaudais, New Orleans, for Seale Pest Control Corp.
Robert E. Couhig, Jr., Adams & Reese, New Orleans, for Louisiana Pest Control Association, Inc., amicus curiae.
Jerry C. Paradis, Baldwin, Haspel, Rainold, Meyer & Reso, New Orleans, for New Orleans Independent Pest Control Operators and Suppliers Association, Inc., amicus curiae.
Before REDMANN, STOULIG and MORIAL, JJ.
REDMANN, Judge.
Defendant pest control company appeals from a $3,585 judgment for the cost of repairing beetle damage in a wood frame house it inspected for termite damage at the request of a real estate agent[1] (not made a party) through whom plaintiffs agreed to buy the house from the owners (made defendants but not cast and therefore not before us on this appeal by the pest control company alone).
The principal question is whether one obliged towards a would be house-purchaser to inspect the house for termite damage is responsible for undiscovered beetle damage.
That question depends on what a "termite inspection" means, between prospective house purchaser and a pest control company which knows that the "termite inspection" is for the purpose of assuring the purchaser that the house does not have either infestation or hidden damage. The pest control company could not reasonably suppose that the prospective purchaser was unwilling to pay a contracted price for a house with damage from subterranean termites, but was willing to pay the same price for the same house with the same damage but from beetles (or another kind of termite). Thus it would make no sense (it would be an "absurd consequence" within C.C. 1945(3)) to construe a pest control company's contract for a "termite inspection" for purposes of deciding whether to buy a house as not requiring an inspection for wood-destroying insects of all kinds found within the locale of the house to be purchased unless the house-buyer is made aware that there are other wood-destroying insects and he elects, in order to save the presumably higher cost of a complete inspection, an inspection for subterranean termites alone. (This might be a reasonable election, since that kind of termite causes 90% amicus curiae's brief says 99% of damage in this area. But it is an election that the house-owner, rather than real estate agent and pest control company, should make.)
*358 We note also that the "termite inspection"[2] here given was only for subterranean termites. Had there been a proper inspection for dry wood termites, the beetles would most probably have been discovered since the inspection for these two insects is similar.
We thus affirm on liability.
On quantum, we conclude that the necessity for replacing the entire floor was reasonably supported by the evidence (especially that partial replacement could have cost more), despite the possibility of a contrary inference.
Affirmed.
NOTES
[1] The suggestion that the prospective purchasers had therefore no contractual privity with appellant overlooks that the termite inspection was for the purchasers' benefit and at their cost.
[2] "Termite inspection" is the description in the rubber-stamped clause in the buy-sell agreement provided by the real estate agent, and there is no showing that the real estate agent requested an inspection limited to subterranean termites.